IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DENNIS THOMPSON,** | |
| **Plaintiff,** | |
| v. | Case No. 24-cv-734-SPM |
| **ALISA DEARMOND, ANTHONY WILLS, ANGELA CRAIN, and SERGEANT KRIEDER,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Dennis Thompson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Thompson alleges that Defendants were deliberately indifferent to numerous medical conditions and retaliated against him for filing lawsuits.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

In his Complaint, Thompson makes the following allegations: On May 3, 2022, Thompson was placed in the healthcare unit in Room 309 prior to having hip replacement surgery (Doc. 1, p. 8). Thompson had his hip surgery on May 4, 2022, and was released from the hospital on May 6, 2022 (*Id*.). Prior to his release, the surgeon informed Thompson that his new hip had a limited range of motion and Thompson would need to follow specific instructions to protect the integrity of the hip (*Id*.). Specifically, Thompson was instructed to sit only with his knees level with or lower than his hip and use a raised toilet with arm rests and grab bars. He would also need assistance when getting out of bed, dressing his lower body, using the bathroom, or taking a bath (*Id*. at pp. 8-9). The surgeon also noted that Thompson should be housed close to the nurses' station in order to obtain assistance (*Id*. at pp. 9, 13). Hospital staff informed Thompson that they had already called and spoken to medical staff at Menard about these requirements.

Upon arriving back at Menard, a nurse informed Thompson that he would have to be moved to a new room because Room 309 did not have a raised toilet stool or bed for Thompson's recovery (*Id*. at p. 9). But Sergeant Krieder argued with the nurse, arguing that Thompson should be returned to Room 309 despite the room not meeting the surgeon's criteria for recovery (*Id*.). Although the nurse informed Krieder of Thompson's need for a raised hospital bed and toilet, Krieder refused to place Thompson in a different room (*Id*. at pp. 9-10, 13). Krieder noted that Thompson complained too much, filed lawsuits, and threatened to file lawsuits. Krieder placed Thompson in Room 309 and instructed an inmate worker to help Thompson into bed (*Id*. at p. 10).

The inmate worker tried to help Thompson transfer from his wheelchair to the prison bunk, but the bed was too low and the two fell to the floor (*Id*. at p. 10). Thompson twisted in the fall to avoid landing on his incision and twisted a muscle in his upper buttocks (*Id*. at pp. 10-11). He also hit his head (*Id*.). After helping Thompson off the floor, the inmate worker put Thompson in a plastic chair to sleep in because the bed was too low (*Id*. at p. 11). Krieder agreed with the worker's plan to place Thompson in the plastic chair, noting that Thompson was not going to move to another room (*Id*.). Thompson was forced to sleep in a plastic chair without side arms (*Id*.).

Thompson's room was far away from the nurses' station and also had a toilet that was lower than the bed (*Id*. at p. 11). As a result, Thompson was not able to obtain help to use the toilet the first night and at around 1:30 a.m. ended up urinating and defecating on himself (*Id*.). Although he yelled for help, prison staff did not notice Thompson's condition until they made rounds (*Id*. at pp. 11-12). Sergeant Krieder ordered inmate workers to help clean Thompson. The workers placed him in the shower area while they cleaned his cell. Thompson alleges that he was extremely cold while sitting in the shower room in a hospital shirt (*Id*. at p. 12). Then the workers "hosed" Thompson down in order to clean him (*Id*.).

The following morning, a member of the warden's staff toured the healthcare unit. They found Thompson sitting in a chair and Thompson explained what happened to him upon his return from the hospital (*Id*. at p. 13). Thompson was then transferred to a different room with a proper hospital bed (*Id*. at pp. 13-14). But Thompson alleges that during the course of his stay in the healthcare unit he was moved at least 15 times (*Id*. at

p. 14). Sometimes rooms lacked a toilet or running water. He was sometimes provided with a urinal or had to knock on the window to use the restroom in the healthcare unit (*Id.* at p. 14). Sometimes Thompson waited so long to use the restroom that he ended up urinating and/or defecating on himself (*Id.* at pp. 14-15). When he was able to make it to the toilet area, he had to move the raised toilet chair from the shower area to the toilets (*Id.* at p. 15). The toilet seat weighed at least 50 pounds and was difficult to move (*Id.*). Although he specifically spoke to Krieder, Warden Wills, and Healthcare Unit Administrator Angela Crain about these issues, they refused to help (*Id.*). They informed Thompson that it was good to walk and move as much as possible (*Id.*). Thompson informed them that he was under doctor's instructions to move only as much as he could tolerate and to avoid heavy lifting (*Id.*). Crain, Wills, and Krieder declined to help him. As a result of having to lift the toilet chair, Thompson's wound partially re-opened (*Id.* at p. 15).

Thompson also alleges that Angela Crain and Nurse Practitioner Alisa Dearmond failed to adequately conduct a pre and post operation plan for Thompson, resulting in delays in his pain medication (Doc. 1, p. 17). Prior to his surgery, Thompson met with Dearmond about the procedure and his post operation needs (*Id.*). Although Thompson informed Dearmond that he had learned about delays in receiving pain medications from other inmates and their grievances, Dearmond declined to do anything about his concerns, noting that Thompson did not know what pain medication the surgeon would prescribe (*Id.* at pp. 17-18). Dearmond also noted that Thompson probably coached those inmates on how to write their grievances (*Id.* at p. 18).

4

After his surgery, Thompson was prescribed a specific pain medication, but he did not receive the medication at Menard until days later (*Id*.). Without the proper pain medication, he was in serious pain. He spoke with Crain during her rounds and explained his lack of proper pain medication. But Crain merely noted that he was on other pain medications and walked away (*Id*. at pp. 18-19). Thompson notes that he has filed several lawsuits against Crain for her deliberate indifference in other cases. He alleges that Crain and Dearmond sought to retaliate against him by denying him pain medications and falsifying medical records to make it look like he was receiving the proper treatment (*Id*. at pp. 19-20). He alleges that when the proper pain medications came in, both Crain and Dearmond offered to give him the medication along with his other pain medications (*Id*. at p. 20). They indicated that they did not have to prescribe the exact medication the surgeon recommended and noted that Thompson could not sue them for the issues with his medication (*Id*. at pp. 20-21).

In addition to failing to provide him with proper treatment after his hip surgery, Thompson also alleges that Crain and Dearmond failed to provide him with adequate treatment for his back issues (Doc. 1, p. 22). Thompson alleges that he has severe degenerative joint/disc disease, spinal stenosis, and bulging discs (*Id*. at p. 23). After his hip surgery, he was sent for a surgical evaluation for his spine on June 6, 2022 and eventually received spinal surgery in December 2022 in order to improve Thompson's ability to walk. During a January 2023 follow-up, Thompson noted that he was able to stand straighter. The surgeon noted that Thompson might have issues higher in his spine, but he was only approved for a lumbar MRI and would need to see the surgeon again if

his condition did not improve (*Id.*). After completing therapy on his back, Thompson informed Crain and Dearmond that he was still in pain. But they refused to send Thompson back to the orthopedic surgeon for a follow-up or spinal injection. He now suffers from pain in his back and issues with bladder and bowel control (*Id.* at p. 25-26). He sits on the stool for over an hour trying to have a bowel movement, which causes him to miss recreation time and exercise. As a result, he has gained weight and is now considered morbidly obese (*Id.* at pp. 26-28). Although Dearmond knows that further surgery would resolve his issues, she refuses to send him out for further consultation with the orthopedic surgeon (*Id.* at p. 27).

Thompson also alleges that in late 2022 he was diagnosed with a thyroid deficiency (Doc. 1, p. 30). He was prescribed Synthroid for the condition. Thompson alleges that he previously complained to Dearmond about his thyroid, but she merely placed her fingers on his neck and noted that nothing felt off. He also complained to Crain about issues he thought were related to his thyroid, including tenderness in his neck and weight gain (*Id.*). Both Crain and Dearmond refused to send him out for care. After being released from the healthcare unit, he was seen by Menard's medical director who ordered numerous labs (*Id.* at p. 30). Those labs revealed issues with his thyroid gland, and he has now received medication for his condition (*Id.* at pp. 30-31).

## **Preliminary Dismissals**

In addition to his claims regarding treatment for his hip and back, Thompson notes that he is morbidly obese and needs to lose weight. Although he alleges that Wexford refuses to provide him with treatment for his obesity, Thompson fails to identify Wexford

as a defendant in the case caption. *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Further, Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Here, Thompson merely alleges that his doctor submitted a request for Ozempic injections, and it was rejected by Wexford. He also alleges that Crain and Wexford previously conceded that he was morbidly obese in another of his lawsuits, but they refuse to send him out for weight loss consultation. But there are no allegations to suggest that Wexford has a policy and/or practice which led to the denial of his weight loss medications. Further, he only alleges in conclusory fashion that Crain and/or Dearmond acted with deliberate indifference to his obesity. There are no allegations suggesting when he requested care from the defendants and their response, if any. Thus, to the extent Thompson alleges that Wexford, Crain, and/or Dearmond were deliberately indifferent in treating his obesity, his claim is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to conditions of confinement and/or medical needs claim against Krieder for refusing to house Thompson in a cell that fit his medical needs.**

**Count 2:** **Eighth Amendment deliberate indifference to conditions of confinement and/or medical needs claim against Krieder,**

7

|          |                                                                                                                                                                                                                                      |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|          | **Anthony Wills, and Angela Crain for failing to move Thompson to a cell with an accessible toilet.**                                                                                                                                |
| Count 3: | **First Amendment retaliation claim against Krieder for housing Thompson in an inadequate cell in retaliation for Thompson filing lawsuits.**                                                                                        |
| Count 4: | **Eighth Amendment deliberate indifference claim against Alisa Dearmond and Angela Crain for failing to provide Thompson with proper pain medication after surgery.**                                                                |
| Count 5: | **First Amendment retaliation claim against Alisa Dearmond and Angela Crain for failing to provide Thompson with proper pain medication and falsifying his medical records in retaliation for Thompson filing lawsuits against the defendants.** |
| Count 6: | **Eighth Amendment deliberate indifference claim against Alisa Dearmond and Angela Crain for failing to provide Thompson with additional care for his back condition.**                                                              |
| Count 7: | **Eighth Amendment deliberate indifference claim against Alisa Dearmond and Angela Crain for failing to test or treat Thompson for a thyroid condition.**                                                                            |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

Thompson adequately alleges Eighth Amendment claims in Counts 1 and 2 against Krieder, Anthony Wills, and Angela Crain. He alleges that the officials knew

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

8

about his medical needs after surgery because the surgeon informed healthcare staff prior to Thompson's release and Thompson specifically spoke to them about his needs. But they put him in rooms in the healthcare unit that did not meet his medical needs, thus subjecting him to unconstitutional conditions of confinement. Thompson also alleges that the defendants failed to honor the surgeon's treatment plan and acted with deliberate indifference to his medical needs.

Thompson further states claims for deliberate indifference against Alisa Dearmond and Angela Crain in Counts 4, 6, and 7. He alleges that he sought care from them for his post-surgical pain, back issues, and thyroid and they failed to provide him with adequate and appropriate care.

Finally, Thompson states viable retaliation claims against Krieder in Count 3 and Alisa Dearmond and Angela Crain in Count 5.

## Disposition

For the reasons stated above, Count 1 shall proceed against Krieder, Count 2 shall proceed against Krieder, Angela Crain, and Anthony Wills. Count 3 shall proceed against Krieder. Counts 4-7 shall proceed against Angela Crain and Alisa Dearmond.

The Clerk of Court shall prepare for Defendants Sergeant Krieder, Anthony Wills, Angela Crain, and Alisa Dearmond: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Thompson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Thompson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Plaintiff's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Thompson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Thompson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the

Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 15, 2024.**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**